

## NUMBER 13-21-00275-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

LEONARDO MONTOYA III,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

### On appeal from the 36th District Court
### of San Patricio County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Silva and Peña
Memorandum Opinion by Chief Justice Contreras**

Appellant Leonardo Montoya III was convicted of continuous sexual abuse of a young child, a first-degree felony, and was sentenced to life imprisonment without parole. *See* TEX. PENAL CODE ANN. § 21.02(b). On appeal, Montoya contends that the trial court erred by "admitting the complainant's grandmother's hearsay outcry testimony," by admitting "the hearsay outcry testimony of the [sexual assault nurse examiner (SANE)],"

and by "designating the forensic interviewer as the outcry witness." We affirm.

## I. BACKGROUND

The indictment alleged that, from on or about December 1, 2018, through March 1, 2019, Montoya committed two or more acts of sexual abuse against M.M., a child then younger than fourteen years of age. *See id.* The record reflects that M.M. is Montoya's daughter and was ten years old at the time of the alleged offenses.

At trial, M.M.'s grandmother Olga Santellana was the State's first witness. She testified her daughter Erica Pruneda and M.M. were living with her in 2019. On February 23 of that year, M.M. was "acting weird" when she woke up. Over defense counsel's hearsay objection, Santellana testified that M.M. "started trembling and crying" and "said . . . 'I don't want to go with my Dad. I hate him. . . . He makes me kiss his privates.'" Santellana called the police and at their advice, she gathered M.M.'s clothes—which she had worn two days prior while staying with Montoya—in a plastic bag. She also called M.M.'s mother, Pruneda, who was at work at the time. Santellana said Pruneda had been in a relationship with Montoya since he was released from prison in December of 2018, and though they did not live together, Montoya visited Pruneda and M.M. "[p]robably every day."

Sandra Pardo, a forensic nurse, conducted M.M.'s SANE examination on February 23, 2019. She first obtained a medical history from M.M., which she recited verbatim at trial, without objection. M.M. told Pardo that Montoya "makes me suck his male part." M.M. further reported that Montoya once "licked" her on her sexual organ, and once "tried to put his middle part down there in" her sexual organ. She reported: "I told my grandma today because I didn't want to go over there anymore. It was too much." Using swabs,

Pardo collected samples from M.M.'s mouth, chest, and genitals. She also examined M.M.'s genitals visually but did not observe any trauma.

The State then called Penny Green, an interviewer at the Children's Advocacy Center. The following colloquy occurred at a bench conference prior to Green's testimony:

| | |
|---|---|
| [Prosecutor]: | This witness is the interviewer, the forensic interviewer, from the Children's Advocacy Center. And so I'm using her as the outcry witness in the case, which means we have to have a hearing outside of the presence of the jury. |
| THE COURT: | Right, right. |
| [Prosecutor]: | Just a finding that her testimony—that her testimony is reasonable. It is reliable. That's it. |
| THE COURT: | Well, we have to have a hearing outside the presence of the jury— |
| [Prosecutor]: | Or you just make a finding. |
| THE COURT: | —unless you're not going to object. |
| [Defense counsel]: | No. Your Honor, I'm very familiar with Ms. Green and her work. I have no objections to the—I mean,— |
| THE COURT: | Okay, then that's fine. |
| | . . . . |
| [Defense counsel]: | This isn't her or my first rodeo so, yes, Ms. Green is a very reliable witness. |
| THE COURT: | Okay. So you're satisfied? |
| [Defense counsel]: | Yes, Your Honor. |
| THE COURT: | Then you can proceed and we don't have to excuse the jury. |
| [Prosecutor]: | Thank you, Your Honor. |
| [Defense counsel]: | Yes. |

Green testified that she interviewed M.M. on February 27, 2019. When Green

asked M.M. why she was there, M.M. said, "My father made me suck him." M.M. told Green this happened "[e]very time she was at her grandmother's on the weekends" and on "days that she would have to walk home to her aunt's house from school," from the end of December 2018 to the time she made the outcry. M.M. also reported to Green that Montoya once "tried to penetrate her vagina with his middle part," once "attempted to perform oral sex on her," and "inserted his fingers into her vagina." M.M. told Green that Santellana was the first person she spoke to about the abuse.

M.M. testified at trial that she was twelve years old and in the seventh grade. She gave testimony consistent with the outcries she made to Santellana, Pardo, and Green. M.M. testified that the abuse occurred "[m]ost every time I saw [Montoya]," and it had been going on for "[a] few months" as of the time she informed her grandmother about it. M.M. stated that Montoya would tell her "not to tell anybody because he can get in trouble."

Testimony by Texas Department of Public Safety forensic technicians established that M.M.'s clothes and the swabs from her SANE examination were tested for the presence of semen and DNA. No semen was detected; however, DNA consistent with Montoya was detected on the inside of M.M.'s bra and on swabs which were taken from that bra during the SANE exam.

Montoya testified in his own defense. He stated that he was fourteen years old and Pruneda was thirteen years old at the time M.M. was born. When he was released from prison, Pruneda and M.M. would visit him "practically every day." He agreed that he spent the night at a hotel with Pruneda and M.M. about two days before M.M. made the outcry of abuse to her grandmother. He denied beating Pruneda, and he denied all of the

4

allegations of sexual abuse made by M.M.

The jury found Montoya guilty as charged and he was sentenced as set forth above. This appeal followed.

## II.    Discussion

### A.    Applicable Law and Standard of Review

Article 38.072 of the Texas Code of Criminal Procedure provides that, under certain circumstances, a third party's testimony of a statement made by a child reporting a sex crime against the child is not inadmissible because of the hearsay rule. Tex. Code Crim. Proc. Ann. art. 38.072(b); *see* Tex. R. Evid. 801(d), 802 (providing that hearsay, an out-of-court statement offered to prove the truth of the matter asserted, is generally not admissible). The outcry statement will be admissible if it: (1) describes the alleged offense; (2) was made by the child against whom the charged offense was allegedly committed; and (3) was made to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. Tex. Code Crim. Proc. Ann. art. 38.072(b); *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). The statement "must be 'more than words which give a general allusion that something in the area of child abuse is going on'; it must be made in some discernable manner and is event-specific rather than person-specific." *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (quoting *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990)). Thus, "[t]here may be only one outcry witness per event." *Id.*

The party seeking to offer an outcry statement as evidence under this statute must, on or before the fourteenth day before trial, provide the opposing party with: (1) notice of its intention to offer the statement, (2) the name of the witness through whom it intends

5

to offer the statement, and (3) a written summary of the statement. TEX. CODE CRIM. PROC. ANN. art. 38.072(b)(1).

The trial court has broad discretion to determine which of several witnesses is an outcry witness, and we will not disturb this decision absent a clear abuse of discretion. *Chapman v. State*, 150 S.W.3d 809, 813 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). A trial court abuses its discretion when its decision is outside the zone of reasonable disagreement. *Id.*

## B.      Analysis

By a single issue, Montoya argues that the court erred by "admitting [Santellana's] outcry testimony, the hearsay outcry testimony of [Pardo], and in designating [Green] as the outcry witness." He contends that "[s]ince there was only one outcry witness designated—Ms. Green—[Santellana and Pardo] should not have been allowed to testify."

Prior to trial, the State submitted timely notice under article 38.072 that it would be using the outcry testimony of Santellana, Pardo, and Green at trial. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072(b)(1). The notice explained that the testimony of the three witnesses would be slightly different in terms of which specific instances of abuse they would be describing. *See Lopez*, 343 S.W.3d at 140 ("Hearsay testimony from more than one outcry witness may be admissible under article 38.072 only if the witnesses testify about different events.").[1] Montoya then complains that Santellana, Pardo, and Green "all

---

[1] Specifically, the notice stated that Santellana would testify that M.M. reported "her dad makes her kiss his middle part"; Pardo would testify that M.M. reported Montoya "makes me suck his male part," "tried to lick me down there," "tried to put his middle part down there," and "tried to go in"; and Green would testify that M.M. reported that "[Montoya's] penis was inside and outside her body," that he "squeezes her boobs with his hands" and that he "squeezes her butt[] under her clothes."

6

testified to M.M.'s statements concerning a single event—the child 'kissing' or 'sucking' [Montoya's] middle part." He argues that the trial court "abused its discretion in allowing multiple witnesses to testify to those specific statements."

Montoya does not address preservation of error in his brief. At trial, Santellana was permitted to testify over defense counsel's hearsay objection, but defense counsel did not object to Pardo's outcry testimony,[2] and counsel affirmatively stated that he had no objection to Green's testimony. Accordingly, the issue has been preserved only as to the outcry testimony of Santellana, and only on the basis that it was inadmissible hearsay. *See* TEX. R. APP. P. 33.1(a)(1).

When defense counsel objected to Santellana's testimony on hearsay grounds, the prosecutor made the following argument for its admission:

> Your Honor, the witness has described a child that's still acting under the trauma of an event that happened to her. If we could let her continue, she'll discuss that in more detail. So I'm asking for this to be an exception under excited utterance, Your Honor. Also, I'm not offering it for the matter of the truth asserted. I'm offering it for the fact that a statement was made to the grandmother which started an investigation.

The trial court overruled the objection. Montoya argues on appeal that Santellana was not a proper outcry witness under article 38.072, but he does not address the State's arguments that her testimony was admissible as an excited utterance or as non-hearsay. *See* TEX. R. EVID. 803(2) (providing that "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" is not excluded due to the rule against hearsay); *see also* TEX. R. EVID. 801(d) (defining

---

[2] The State notes that, had defense counsel objected to Pardo's testimony on hearsay grounds at trial, it would have argued that the testimony was admissible as a statement made for medical diagnosis or treatment. *See* TEX. R. EVID. 803(4) (providing that a statement that "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause" is not excluded due to the rule against hearsay).

hearsay); TEX. R. APP. P. 38.1(i). Montoya has not established that the trial court abused its discretion in overruling his objection.

Even if we were to find error in the admission of Santellana's testimony, the erroneous admission of evidence is generally harmless when the same evidence is admitted elsewhere without objection. *See Gardner v. State*, 306 S.W.3d 274, 293 n.39 (Tex. Crim. App. 2009); *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.") (citing *Wagner v. State*, 109 S.W. 169, 169 (Tex. Crim. App. 1908)). This principle has been applied in the context of erroneously-admitted outcry testimony. *See, e.g.*, *Padilla v. State*, 278 S.W.3d 98, 107 (Tex. App.—Texarkana 2009, pet. ref'd) (finding error in admitting outcry testimony to be harmless where, "for the most part[,] the outcry testimony was a reiteration of evidence already otherwise properly admitted"); *Zarco v. State*, 210 S.W.3d 816, 833 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (holding no harm in admitting officer's outcry testimony because the complainant gave "the same testimony [as the officer] gave regarding the abuse"); *West v. State*, 121 S.W.3d 95, 105 (Tex. App.—Fort Worth 2003, pet. ref'd) (finding no harm in admitting outcry testimony by complainant's mother where complainant previously provided "detailed, factually specific testimony concerning the assault"). As noted, Pardo and Green testified without objection as to M.M.'s outcries of abuse. And M.M. gave direct testimony at trial regarding the acts of abuse committed by Montoya, again without objection. Therefore, any error in admitting Santellana's testimony would be harmless. *See* TEX. R. APP. P. 44.2.

### III.   CONCLUSION

Montoya's issue on appeal is overruled, and the trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
27th day of April, 2023.